# LEAVITT & KERSON
### ATTORNEYS AT LAW

MARC CRAWFORD LEAVITT
PAUL E. KERSON

BENJAMIN M. SHAW (1912-2002)

45-29 47th Street
Woodside, NY 11377
(718) 793-8822
Fax # (718) 729-0623
PLEASE REPLY TO
WOODSIDE OFFICE

JOSEPH N. YAMANER
IRA R. GREENBERG
JOHN F. DUANE
TALI B. SEHATI
NIGINA KHASIDOVA
COUNSEL
226 W. 26TH STREET, 8TH FL
New York, NY 10001
(212) 973-9339
118-35 QUEENS BLVD.
Suite 1205
Forest Hills, NY 11375

Via ECF

February 3, 2015

Judge Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Nektalov v. Kuwait Airways Corporation*
Docket No. 15 CV 00033 (RRM) (JO)

Dear Judge Mauskopf:

I represent the plaintiffs in connection with the above named case. I am writing to comply to Your Honor's ECF Order of January 29th, 2015 directing that I respond to the legal arguments relating to preemption and the "Act of State Doctrine" raised in defendant's pre-motion conference letter (ECF Doc. No. 5).

1. The Doctrine of Preemption does not apply.

We filed plaintiffs' Summons and Complaint in the New York State Supreme Court for Queens County under the New York State Human Rights Law, Executive Law Sections 296 and 297. Defendant claims that this State Law is preempted by the Airline Deregulation Act (ADA), 49 U.S.C. Section 41713(b).

This argument must fail in light of the following facts: the New York State Human Rights Law was enacted in 1945. After an intense national debate, known as the Civil Rights Movement, led by the Rev. Dr. Martin Luther King, Jr., the United States Congress essentially enacted the New York State Human Rights Law for the entire country in 1964. It has been codified as 42 U.S.C. Section 2000a and is entitled, "Prohibition Against Discrimination or Segregation in Places of Public Accommodation". This landmark adoption of the New York State Human Rights Law by the United States Congress, states as follows:

"(a) Equal access: all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin.

(b) Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodging; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments…

(c)…For purposes of this section, 'commerce' means travel, trade, traffic, commerce, transportation, or communication among the several States or between the District of Columbia and any State, or <u>between any foreign country</u> or any territory or possession <u>and any State</u> or the District of Columbia, or between points in the same State but through any other State, or the District of Columbia <u>or a foreign country</u>." (emphasis added)

The intent of the United States Congress in enacting the New York State Human Rights Law for the entire country as part of the Civil Rights Law of 1964 could not be clearer. 42 U.S.C. Section 2000a clearly applies to "travel, trade, traffic, commerce, transportation or communication" involving "<u>any foreign country</u>…"

Thus, there can be no preemption argument whatsoever as Congress has seen fit, after an especially vigorous national debate, to enact the New York State Human Rights Law for the entire nation.

In fact, this case is the reverse of preemption. New York State led the way and its law became the national law. For an understanding of how all of this happened, see Jack Greenberg, *Crusaders in the Courts: How a Dedicated Band of Lawyers Fought for the Civil Rights Revolution*, Basic Books, A Division of Harper Collins Publishers, New York, 1994, Pages 54, 300, and 435. Throughout this period of time, Mr. Greenberg was part of Dr. King's legal team. For his efforts on the part of Dr. King and the nation, Mr. Greenberg was awarded a law professorship at the Columbia University Law School.

42 U.S.C. Section 2000a applies to everyone and forbids "discrimination or segregation the ground of race, color, religion, or national origin". It is respectfully submitted that the difference between the word "creed" in the New York State Human Rights Law and the word "religion" in 42 U.S.C. Section 2000a is a distinction without a difference. Further, the distinction between "national origin" and "citizenship" is another distinction without a difference.

Defendant cites *Espinoza v. Farah Manufacturing Company, Inc.*, 414 U.S. 86 (1973). This was an employment discrimination case. Nevertheless, its opinion supports plaintiffs' complaint. In *Espinoza v. Farah*, the U.S. Supreme Court held:

"Certainly it would be unlawful for an employer to discriminate against aliens because of race, color, religion, sex, or national origin – for example, by hiring aliens of Anglo-Saxon background, but refusing to hire those of Mexican or Spanish ancestry. Aliens are protected from illegal discrimination under the Act, but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage." See 414 U.S. at 95.

In the instant case, the defendant discriminated against the plaintiff Iris Eliazarov Nektalov both because of her religion (Jewish) and because of her national origin (Israeli). Discovery will undoubtedly reveal that the large numbers of Arab citizens and residents of Israel have traveled on Kuwait Airways Corporation airplanes. Further, in the instant case, the defendant had no problem selling three tickets on their airplane to the plaintiffs, thus waiving any reliance on its national law to the contrary. Defendant also had no problem collecting the cost of the tickets on plaintiff's credit card, despite its national law to the contrary.

All of this must be taken into consideration by the Court in allowing defendant to make a motion to dismiss. They certainly waived any Kuwait law when they followed the New York and United States law in selling airplane tickets to anyone who wanted to buy them. That is the clearest indication that defendant full well knows its obligation under the New York State Human Rights Law, Executive Law Sections 296 and 297 and under the Civil Rights Act of 1964, 42 U.S.C. Section 2000a.

2. The Act of State Doctrine does not apply.

Defendant argues that the act of State Doctrine applies to this case. This is a false argument for the following reasons:

On defendant's website, reproduced as ECF Doc. No. 6, the defendant clearly states,

"After the decision of its new CEO in October 2007, it is half privatized in the year 2010, according to him, he wants this airline to perform better and compete with other successful airlines, and airline will not be advance in technology, fleet renewal without privatization. Kuwait Airways Corporation is declared a shareholding company by the Kuwaiti government and by the approval of the Kuwait National Assembly in January 2013."

It is axiomatic that a corporation is not a national government. A corporation is not covered by the Act of State doctrine.

In any event, the Act of State doctrine has been summarized as follows:

"The act of state doctrine precludes United States courts from examining the validity of the official acts of a foreign sovereign within its own territory, even if such acts may violate international law." See Robert L. Haig, Editor-in-Chief, *Business and Commercial Litigation in Federal Courts*, Third Edition, Volume 2, Page 1145, 1147, 1152, and 1157 American Bar Association, West – A Thomson Reuters Business, 2011 with 2013-2014 Supplement (emphasis added)

In the instant case, defendant cites Kuwait's Law No. 21 of 1964, Barring Trade with Israelis or the State of Israel. The laws of Kuwait have no jurisdiction whatsoever on the ground at Kennedy Airport in Queens County, New York. Furthermore, the instant case concerns a flight from New York to London, England that never stopped in Kuwait. The flight in question was not going to Kuwait and would not touch down on any territory that was governed by Kuwait.

Kuwait law has no force and effect on the ground at Kennedy Airport in Queens County, New York. The Act of State Doctrine is not extraterritorial. Kuwait's laws cannot govern nor supersede the laws of the United States or any of its 50 states as clearly set forth in the New York State Human Rights Law and its federal successor, the Civil Rights Act of 1964, 42 U.S.C. Section 2000a.

The law is clear that the Act of State Doctrine only applies to acts of a foreign state acting within its own territory. See *Banco Nacionale de Cuba v. Sabbatino*, 376 U.S. 398 at 414-415 (1964). See Haig at page 1152.

The law is equally clear that the Act of State Doctrine does not apply to purely commercial actions by a foreign sovereign. In the instant case, defendant may argue that because it is 50% owned by the government of Kuwait, somehow the act of selling three airline tickets in New York is covered by the Act of State Doctrine. This argument is clearly contrary to the case law on this subject. See *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) and *Underhill v. Hernandez*, 168 U.S. 250 (1897). See Haig at page 1157.

Wherefore, it is respectfully requested that defendant's application to make a motion to dismiss the complaint be denied in all respects, and that plaintiff either be permitted to make a motion to remand this matter to the New York State Supreme Court for Queens County, or, in the alternative, for this Court to decide plaintiff's previously filed State Court motion for a Preliminary Injunction directing enforcement of the New York State Human Rights Law at Kennedy Airport in Queens County, New York, which is nowhere near Kuwait nor is it subject to the Laws of Kuwait.

Respectfully submitted,

Paul E. Kerson
Attorney for Plaintiffs

Cc: John Maggio, Esq.
Condon & Forsyth
Attorneys for Defendants

Mr. David Nektalov, Plaintiff
Ms. Iris Eliazarov Nektalov, Plaintiff